IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

NO.    **21-13468-HH**

Jonathan Mullane,

Appellant,

- versus -

Federico Moreno, et. al.,

Appellees.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
_____

BRIEF FOR THE APPELLEES

Juan Antonio Gonzalez
United States Attorney
Attorney for Appellees
99 N.E. 4th Street
Miami, Florida 33132-2111
305-961-9433

Lisa Tobin Rubio
Chief, Appellate Division

Daniel Matzkin
Assistant United States Attorney

Laura Thomas Rivero
Assistant United States Attorney
Of Counsel

**Mullane v. Moreno, et al., Case No. 21-13468-HH**

**Certificate of Interested Persons**

In compliance with Fed. R. App. P. 26.1 and 11th Circuit Rules 26.1 and 28-1, the undersigned certifies that the list set forth below is a complete list of the persons and entities previously included in the CIP in the appellant's initial brief and adds persons and entities (designated in bold face) who have an interest in the outcome of this case and were omitted from the appellant's CIP. We have included the names marked by an asterisk only because they appear on the CIP in the appellant's initial brief, but we do not believe they have an interest in the outcome of this case.

**Becerra, Hon. Jacqueline**

**Dion, Scott**

Fajardo Orshan, Ariana

"Florida Board of Bar Examiners"*

Gonzalez, Juan Antonio

Greenberg, Benjamin G.

Kallon, Hon. Abdul K.

Lee, Dexter

Lehr, Alison W

**Mullane v. Moreno, et al., Case No. 21-13468-HH**

**Certificate of Interested Persons (Cont'd)**

"Massachusetts Board of Bar Examiners"*

**Matzkin, Daniel**

Moore, Hon. K. Michael

Moreno, Hon. Federico A.

Mullane, Jonathan

Mullane, E. Peter

**Rivero, Laura Thomas**

Roberts, Lisa T.

**Rubio, Lisa Tobin**

Smachetti, Emily M.

"U.S. District Court for the Southern District of Florida"*

United States of America

"United States Attorney's Office"*

"United States Department of Justice"*

United States Securities and Exchange Commission

"University of Miami"*

**Mullane v. Moreno, et al., Case No. 21-13468-HH**

**Certificate of Interested Persons (Cont'd)**

Wherry, Karin

*Laura Thomas Rivero*
Laura Thomas Rivero
Assistant United States Attorney

## Statement Regarding Oral Argument

The United States of America respectfully suggests that the facts and legal arguments are adequately presented in the briefs and record before this Court and that the decisional process would not be significantly aided by oral argument.

# Table of Contents

**Page**:

Certificate of Interested Persons ........................................................................ c-1

Statement Regarding Oral Argument .................................................................. i

Table of Contents ................................................................................................ ii

Table of Citations ...............................................................................................vi

Statement of Jurisdiction .................................................................................. xiii

Statement of the Issues ....................................................................................... 1

Statement of the Case:

     1.    Course of Proceedings and Disposition in the Court Below ...............2

     2.    Statement of the Facts ........................................................................7

     3.    Standards of Review ........................................................................14

Summary of the Argument ................................................................................14

Argument and Citations of Authority:

     I.    The District Court Did Not Procedurally Err In Its Application of Federal Rule of Civil Procedure 12(b)(6)............................................................17

# Table of Contents

## (continued)

**Page:**

Argument and Citations of Authority:

II.    The District Court Correctly Dismissed All Claims Against Judge Moreno Because He Enjoyed Absolute Judicial Immunity ................................... 22

A. The Applicable Law ........................................................................ 22

B. All of Judge Moreno's Alleged Acts Were Judicial Acts That He Performed Within His Jurisdiction as the Presiding Judge in the Barclays Case**.** ..................................................................................... 24

    1.  Statements made at the hearing and in the order .......................... 24

    2.  Phone call to Mullane ................................................................... 26

    3.  Request for USAO timesheet ....................................................... 26

    4.  Letter to law school ...................................................................... 27

C. Harper v. Merckle is Factually Distinguishable ................................. 29

III.   The District Court Correctly Dismissed The Bivens Claims Against Lehr, Greenberg and Roberts Based On Qualified Immunity. .......................... 31

A. The Relevant Law ............................................................................. 32

# Table of Contents

## (continued)

**Page:**

B. Lehr, Greenberg, and Roberts Acted Within The Scope of Their Employment. ........................................................................33

C. Mullane Failed to Allege a Violation of a "Clearly Established" Right..........................................................................36

   1. First Amendment.................................................................37

   2. Fourth Amendment ............................................................38

   3. Fifth Amendment ..............................................................39

IV. The District Court Properly Substituted The United States As A Defendant In Place Of Lehr, Greenberg, And Roberts As To All The Florida Tort Claims..................................................................44

V. The District Court Properly Dismissed The RICO And RICO Conspiracy Claims For Failure To State A Claim.....................................48

A. Applicable Law ....................................................................49

B. Mullane Failed to Allege Any RICO Predicate Acts .........................50

C. Mullane Failed to Allege Criminal Acts of a Continuing Nature .......52

   1. Close-ended continuity.....................................................52

   2. Open-ended continuity .....................................................53

D. RICO Conspiracy .................................................................54

**Table of Contents**

**(continued)**

**Page:**

VI.    The District Court Properly Dismissed Fictitious "Does 1-10"

      Defendants ................................................................................... 55

Conclusion ....................................................................................................... 57

Certificate of Compliance ............................................................................... 58

Certificate of Service ...................................................................................... 59

v

**Table of Citations**

**Cases:**                                                                                            **Page:**

Albra v. Advan, Inc.,

490 F.3d 826 (11th Cir. 2007)..................................................................18

American Dental Ass'n v. Cigna Corp.,

  605 F.3d 1283 (11th Cir. 2010)................................................ 18, passim

Anderson v. United States,

  364 F. App'x 920 (5th Cir. 2010) ......................................................47

Armstrong v. Thompson,

  759 F. Supp. 2d 89 (D.D.C. 2011) ......................................................47

Ashcroft v. Iqbal,

  556 U.S. 662 (2009) ............................................................ 17, passim

Barcelona v. Sec'y, Dept. of Corr.,

  847 F. App'x 689 (11th Cir. 2021) ......................................................34

Bell Atl. Corp. v. Twombly,

  550 U.S. 544 (2007) ..............................................................................17

Bishop v. Wood,

  426 U.S. 341 (1976) ..............................................................................42

**Table of Citation**

**(continued)**

<u>Cases</u>:                                                                                                    <u>Page:</u>

<u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,</u>

    403 U.S. 388 (1971) ................................................................. 4, <u>passim</u>

<u>Board of Regents v. Roth,</u>

    408 U.S. 564 (1972) ...............................................................41

<u>Buxton v. City of Plant City,</u>

    871 F.2d 1037 (11th Cir. 1989)...............................................43

<u>Cisneros v. Petland, Inc.,</u>

    972 F.3d 1204 (11th Cir. 2020)...................................... 49, 50

<u>Cleveland Bd. of Education v. Loudermill,</u>

    470 U.S. 532 (1985) ...............................................................40

<u>Codd v. Velger,</u>

    429 U.S. 624 (1977) ...................................................... 41, 42

<u>Crocker v. Beatty,</u>

    995 F.3d 1232 (11th Cir. 2021)...............................................41

<u>Dean v. Barber,</u>

    951 F.2d 1210 (11th Cir. 1992)...............................................56

vii

**Table of Citation**

**(continued)**

<u>**Cases**</u>:                                                                    <u>**Page**</u>:

DeGuelle v. Camilli,

    664 F.3d 192 (7th Cir. 2011)...................................................................53

Dykes v. Hosemann,

    776 F.2d 942 (11th Cir. 1985)...............................................................23

Fields v. Devereux Found, Inc.,

    244 So. 3d 1193 (Fla. Dist. Ct. App. 2018) ..........................................46

Flohr v. Mackovjack,

    84 F.3d 386 (11th Cir. 1996).................................................................45

Forrester v. White,

    484 U.S. 219 (1988) ..............................................................................23

Garrity v. State of New Jersey,

    385 U.S. 493 (1967) ..............................................................................40

Griffin Indus., Inc. v. Irvin,

    496 F.3d 1189 (11th Cir. 2007)............................................... 19, 32, 33

Gutierrez de Martinez v. Lamagno,

    515 U.S. 417 (1995) ..............................................................................45

**Table of Citation**

**(continued)**

<u>Cases</u>:                                                                                      <u>Page</u>:

<u>H.J. Inc. v. Northwestern Bell Telephone</u>,

   492 U.S. 229 (1989) ..................................................................52

<u>Hall v. Flournoy</u>,

   975 F.3d 1269 (11ht Cir. 2020)..............................................34

<u>Harper v. Merckle</u>,

   638 F.2d 848 (5th Cir. 1981)........................................ 29, 30

<u>Hope v. Pelzer</u>,

   536 U.S. 730 (2002) ..................................................................37

<u>Jackson v. Bell South Telecomms</u>,

   372 F.3d 1250 (11th Cir. 2014)............................. 49, <u>passim</u>

<u>Johnston v. Borders</u>,

   724 F. App'x 762 (11th Cir. 2018) ....................................41

<u>Kalkines v. United States</u>,

   473 F.2d 1391 (Fed. Cl. 1973) ............................................40

<u>Malley v. Briggs</u>,

   475 U.S. 335 (1986) ..................................................................33

ix

**Table of Citation**

**(continued)**

<u>**Cases**</u>:                                                                    <u>**Page**</u>:

<u>McCullough v. Finley</u>,

   907 F.3d 1324 (11th Cir. 2018)................................................................. 23, 24, 29

<u>Mikko v. City of Atlanta, Georgia</u>,

   857 F.3d 1137 (11th Cir. 2017)...............................................................................34

<u>Mireles v. Waco</u>,

   502 U.S. 9 (1991) ......................................................................................... 23, 26

<u>Mullane v. United States, et al.,</u>

   2021 WL 3027150 (1st Cir. 2021) .......................................................................13

<u>Nadler v. Mann</u>,

   951 F.2d 301 (11th Cir. 1992)........................................................................ 46, 47

<u>Osborn v. Haley</u>,

   549 U.S. 225 (2007) ...............................................................................................44

<u>Paul v. Davis</u>,

   424 U.S. 693 (1976) ...............................................................................................42

<u>PBT Real Estate, LLC v. Town of Palm Beach</u>,

   988 F.3d 1274 (11th Cir. 2021)...................................................................... 14, 34

x

**Table of Citation**

**(continued)**

<u>**Cases**</u>:                                                                                    <u>**Page**</u>:

<u>Reese v. Ellis, Painter, Ratterree & Adams, LLP,</u>

    678 F.3d 1211 (11th Cir. 2012)................................................................19

<u>Reichle v. Howards,</u>

    566 U.S. 658 (2012) ....................................................................... 36, 37

<u>Richardson v. Johnson,</u>

    598 F.3d 734 (11th Cir. 2010)................................................................55

<u>Sibley v. Lando,</u>

    437 F.3d 1067 (11th Cir. 2005)..............................................................26

<u>Snow v. DirectTV, Inc.,</u>

    450 F.3d 1314 (11th Cir. 2006)..............................................................18

<u>Stump v. Sparkman,</u>

    435 U.S. 349 (1978) .............................................................................22

<u>Timson v. Sampson,</u>

    518 F.3d 870 (11th Cir. 2008)....................................................... 14, 18

<u>United States v. Campbell,</u>

    26 F.4th 860 (11th Cir. 2022) ....................................................... 14, 18

**Table of Citation**

**(continued)**

<u>**Statutes & Other Authorities:**</u>                                    <u>**Page:**</u>

18 U.S.C. § 1341 ....................................................................................48

18 U.S.C. § 1513 ....................................................................................48

18 U.S.C. § 1962 ............................................................................. 49, 54

18 U.S.C. § 1964 ......................................................................... 2, 48, 29

18 U.S.C. § 1512 ....................................................................................48

28 U.S.C. § 1291 .................................................................................. xiv

28 U.S.C. § 2679 ......................................................................... 5, 44, 45

42 U.S.C. § 1985 ......................................................................................3

42 U.S.C. § 1986 ......................................................................................4

Fed. R. App. P. 4 .................................................................................. xiv

Fed. R. App. P. 26.1 ................................................................................2

Fed. R. App. P. 32 ..................................................................................58

Fed. R. Civ. P. 8 ....................................................................................17

Federal Rule of Civil Procedure 12 ............................................... 1, 4, 17

**Statement of Jurisdiction**

This is an appeal from a final order of the United States District Court for the Southern District of Florida dismissing Mullane's second amended complaint. The district court entered its order dismissing the last remaining defendant and closing the case on August 2, 2021 (DE:90). Mullane filed a timely motion for reconsideration on August 3, 2021 (DE:91). The district court denied the motion for reconsideration on October 6, 2021 (DE:104). Mullane filed a timely notice of appeal on October 7, 2021 (DE:105). See Fed. R. App. P. 4(a)(1)(B), 4(a)(4)(A).

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

xiii

## Statement of the Issues[1]

1.      Whether the district court committed any procedural error when applying Federal Rule of Civil Procedure 12(b)(6).

2.      Whether the district court correctly dismissed Mullane's claims against Judge Moreno because he had absolute judicial immunity from personal liability.

3.      Whether the district court correctly dismissed Mullane's claims against Lehr, Greenberg, and Roberts for alleged violation of his constitutional rights because they had qualified immunity from personal liability.

4.      Whether the district court properly dismissed Lehr, Greenberg, and Roberts, and substituted the United States, on all the Florida tort claims, because they were acting within the scope of their employment as employees of the United States.

5.      Whether the district court properly dismissed the RICO and RICO conspiracy claims for failure to state a claim.

6.      Whether the district court properly dismissed the fictitious "Does 1-10" defendants.

---

[1]      We have reorganized and consolidated Mullane's 13 issues into six issues.

**Statement of the Case**

1. **Course of Proceedings and Disposition in the Court Below**

Appellant Jonathan Mullane appeals the dismissal of his <u>pro se</u> 19-count second amended complaint (DE:45). His lawsuit alleged events in the spring of 2018, while he was a law student intern at the United States Attorney's Office ("USAO") in the Southern District of Florida, supervised by Assistant United States Attorney ("AUSA") Alison Lehr. He recently had filed a <u>pro se</u> lawsuit in the Southern District of Florida about a credit dispute, which was pending before the Honorable Federico Moreno. And he had received and accepted a preliminary offer from Securities and Exchange Commission attorney Lisa Roberts to work as an intern in the SEC's Miami office.

Two years later, Mullane sued Judge Moreno, AUSA Lehr, and SEC attorney Roberts, along with the United States Attorney, Benjamin Greenberg, and fictitious "Does 1 through 10," in their "individual and official capacities" (DE:45:1). [2] Mullane's second amended complaint pled 19 counts:

- Count 1: Civil RICO, 18 U.S.C. § 1964(c), against all defendants (DE:45:21-26)

---

[2]    When citing pleadings below or Mullane's initial brief, we refer to the page number that appears in the header generated by the court's electronic filing system.

- Count 2: Civil RICO conspiracy, against all defendants (DE:45:27)

- Count 3: Civil conspiracy in violation of Florida law, against all defendants (DE:45:27-28)

- Count 4: Slander per se, against Judge Moreno, Lehr, Greenberg, and Does 1-10 (DE:45:28-29)

- Count 5: Tortious interference with contractual relations, against all defendants (DE:45:29-30)

- Count 6: Tortious interference with advantageous business relations, against all defendants (DE:45:30-31)

- Count 7: Tortious interference with prospective economic advantages, against all defendants (DE:45:31-33)

- Count 8: Intentional infliction of emotional distress, against all defendants (DE:45:33)

- Count 9: Deceit, against all defendants (DE:45:34)

- Count 10: Invasion of privacy and intrusion upon seclusion and solitude in violation of Florida common law and the Florida constitution, against Judge Moreno, Lehr, Greenberg, and Does 1-10 (DE:45:35-36)

- Count 11: Violation of 42 U.S.C. § 1985(3), against all defendants (DE:45:36-37)

3

- Count 12: Violation of 42 U.S.C. § 1986, against all defendants (DE:45:38)

- Count 13: Civil liability under <u>Bivens</u>[3] for violating the Fourth and Fifth Amendments, against all defendants (DE:45:39-40)

- Count 14: "<u>Bivens</u> conspiracy," against all defendants (DE:45:40)

- Count 15: "Aiding and abetting," against Does 1-10 (DE:45:40-41)

- Count 16: Abuse of process, against Judge Moreno, Lehr, Greenberg, and Does 1-10 (DE:45:41)

- Count 17: Libel <u>per se</u>, against all defendants (DE:45:42-44)

- Count 18: Republication of libel <u>per se</u>, against all defendants (DE:45:44)

- Count 19: Breach of fiduciary duty, against Lehr (DE 45:45-47).

Mullane demanded money damages and injunctive relief (DE:45:47-48). He attached documents to the complaint as Exhibits A through L (DE:45:50-109).

The defendants moved to dismiss the second amended complaint under Federal Rule of Civil Procedure 12(b)(6) (DE:56). First, Mullane failed to state claims against the "Doe" defendants because he failed to properly identify them or allege what they did (DE:56:2). Second, Judge Moreno moved to dismiss all the claims against him based on absolute judicial immunity (DE:56:3-12). Third,

---

[3]    <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971).

4

Mullane failed to state a claim under §§ 1985(3) and 1986 (DE:56:12-13). Fourth, Lehr, Greenberg, and Roberts were entitled to qualified immunity from suit on the <u>Bivens</u> claims for constitutional violations (DE:56:13-17). Fifth, Mullane failed to state a claim for civil RICO and RICO conspiracy (DE:56:17-23).

Finally, Lehr, Greenberg, and Roberts moved to dismiss all the tort claims because they were immune from personal liability for actions they took within the scope of their employment. They asked the court to substitute the United States as the defendant on those tort claims (DE:56:23-24). Under the Westfall Act, 28 U.S.C. § 2679, they attached the United States Attorney's certification that they were acting within the scope of their employment as employees of the United States at the time of the alleged incidents (DE:56-2).

Mullane opposed the motion to dismiss; opposed the substitution of the United States as the defendant on all tort claims; conceded his § 1985(3) claim failed to state a claim; and asked to take discovery on the attorneys' scope of employment (DE:61). Lehr, Greenberg, and Roberts opposed Mullane's request for limited discovery because he failed to allege any acts to refute their Westfall Act scope-of-employment certification (DE:68).

The district court granted the motion to dismiss in a detailed 44-page memorandum opinion (DE:78, DE:79). It dismissed all claims against "Does 1-10"

5

because Mullane failed to describe the "Does," or say what they did, or show he could easily identify them through discovery (DE:78:6-7). It dismissed all claims against Judge Moreno with prejudice because he had absolute judicial immunity (DE:78:8-16). It dismissed the § 1985(3) and § 1986 claims (Counts 11 and 12) because Mullane did not allege that the defendants acted with class-based discriminatory animus (DE:78:16-19).[4]

The court dismissed the <u>Bivens</u> and <u>Bivens</u> conspiracy claims (Counts 13 and 14) because Lehr, Greenberg, and Roberts enjoyed qualified immunity (DE:78:19-30). It dismissed the RICO claim (Count 1) because Mullane failed to allege criminal conduct of a continuing nature (either closed-ended or open-ended continuity) (DE:78:30-34) and failed to allege any conduct that qualified as predicate acts (DE:78:34-38). And the RICO conspiracy count (Count 2) was legal conclusions and formulaic recitations insufficient to state a claim (DE:78:38-40).

Finally, the district court dismissed Lehr, Greenberg, and Roberts as defendants on the Florida tort claims (Counts 3-10, 16-19) and substituted the United States as the defendant (DE:78:40-44). The court later dismissed the United States upon Mullane's motion (DE:89, DE:90).

---

[4]    Mullane does not challenge the dismissal of his § 1985(3) claims (Counts 11 and 12), so we do not discuss it in our brief.

Mullane filed a motion for reconsideration (DE:91, DE:95). He argued that the district court's order not only misapplied the law, but also defamed him "as a matter of law" (DE:95:4) and violated "his right to due process" and "presumption of innocence" (DE:95:5). He added new arguments that Lehr and Greenberg acted outside the scope of their discretionary authority, violated his First Amendment rights, and denied his liberty interest in his reputation without due process (DE:95:7-11). The defendants opposed his motion (DE:94).

The district court did not reconsider its dismissal because Mullane's motion improperly rehashed arguments he already raised, or could have raised, and failed to show a manifest error of law or fact (DE:104). Mullane timely appealed (DE:105).

## 2.    <u>Statement of the Facts</u>

Mullane's second amended complaint alleged the following facts, which the district court assumed to be true for purposes of the motion to dismiss (DE:78:3, n. 1).

In the spring of 2018, while he was a law student at the University of Miami, Mullane worked as an unpaid intern in the USAO (DE:45:3, 56, 67, 93). He was assigned to the Asset Forfeiture Division, where his supervisor was AUSA Lehr (DE:45:5). The Asset Forfeiture Division was handling cases arising from an international money laundering scheme (DE:45:4, 51, Exh. A). Mullane's father, a

criminal defense lawyer, had represented a co-conspirator in that scheme, and Mullane had helped him by translating confidential correspondence (DE:45:4, Exh. B). Mullane disclosed his conflict of interest to Lehr, but she assigned him to work on those cases anyway (DE:45:5).

Lehr and Greenberg feared Mullane would leak confidential information about the money laundering cases to his father, and the "professional embarrassment and/or bar discipline" from ignoring the conflict of interest (DE:45:5). So Lehr and Greenberg "initially attempted to 'quietly' terminate" his internship (DE:45:5). Mullane was "verbally abused in the Miami USAO in a further attempt to force him to resign" (DE:45:6). Mullane complained about the "verbal abuse" and workplace "hostility" to Lehr, but she did nothing about it (DE:45:6-7, 56, Exh. C).

When Mullane refused to resign, Lehr and Greenberg enlisted the help of Judge Moreno to terminate his internship for cause (DE:45:7). They knew that Mullane had a pro se lawsuit about a "$1600 civil credit dispute" that was pending before Judge Moreno, Mullane v. Barclays Bank Delaware, Inc. (DE:45:7). Lehr and Greenberg asked Judge Moreno to falsely accuse him of inappropriate or unlawful conduct "in open court in order to manufacture and fabricate 'good cause' to terminate [his] federal employment" (DE:45:7). So Judge Moreno set a

"miscellaneous hearing" in the <u>Barclays</u> case for April 10, 2018, and notified Mullane of the hearing by personally calling him on his cell phone (DE:45:8).

At the April 10th hearing, Judge Moreno asked Mullane to explain his visit to his chambers and conversation with his law clerk on Friday, March 23, 2018 (DE:45:61, Exhibit D). Judge Moreno accused Mullane of having an <u>ex parte</u> conversation with his law clerk about entering a default and filing a mandamus petition in the <u>Barclays</u> case and using his position with the USAO to gain entry to chambers (DE:45:9-10, 62-63, 66, 68-70). Mullane admitted telling Judge Moreno's law clerk that he worked for the USAO (DE:45:72-73). Judge Moreno told Mullane that using "the privilege" of working at the USAO to gain entry to his chambers for an <u>ex parte</u> discussion about his personal lawsuit was "the biggest no-no that you can do" (DE:45:72).

Judge Moreno told Mullane he would "have to deal" with his USAO supervisor and "the Florida Bar eventually for this outrageous conduct" (DE:45:63). Judge Moreno said he had notified the United States Attorney about Mullane's use of his position with the USAO to gain entry to his chambers (DE:45:71). Judge Moreno advised Mullane to explain his actions to his USAO supervisors, and "it's up to them to decide what they should do to you" (DE:45:75). Judge Moreno told Mullane, "I'm not going to hold you in contempt" (DE:45:80).

After the hearing, Lehr asked Mullane to "transmit to her certain personal employment records which were on his personal laptop computer" (DE:45:13). Mullane "willingly complied" (DE:45:14). Lehr "falsely and deceptively" told Mullane she needed the employment records for legitimate work-related reasons, but her true motive was to give the time records to Judge Moreno (DE:45:13-14).

After the hearing, Mullane filed a "verified motion" to recuse Judge Moreno from the Barclays case (DE:45:90, Exh. F). In his motion, Mullane argued: "Given Plaintiff's personal appearance at the time in question, and the simple fact that he was 'dressed for the beach,' no reasonable person could possibly conclude that a young man wearing yellow shorts and flip-flops was conducting official business on behalf of the U.S. Attorney's Office or the United States government" (DE:45:88).

In an order entered April 13, 2018, Judge Moreno granted Mullane's recusal motion but said he was "troubled by the lack of truthfulness of a future member of the bar" (DE:45:90, Exh. F). Judge Moreno pointed to the conflict between Mullane's motion—where he claimed he wore "shorts and flip-flops" on the day he visited Judge Moreno's chambers—and his USAO attendance log, where he had reported working at the USAO from 11:00 a.m. to 5:00 p.m. that day (DE:45:90). In his order, Judge Moreno said he would "ask the United States Marshall to retrieve the surveillance tapes of the building and chambers from that date to see if in fact

10

the Plaintiff was 'in shorts and flip-flops' or was dressed as someone working at the

U.S. Attorney's Office" (DE:45:91). Judge Moreno's order concluded:

> The undersigned judge did set a hearing to strongly advise the
> Plaintiff that his reputation was more important than the case
> because he interned at the United States Attorney's office and
> will be seeking admission to the Florida Bar. The undersigned
> judge continues to be concerned with the law student's lack of
> awareness of what ex-parte communications are and the
> importance of candor by litigants, particularly future lawyers.
>
> Because of these concerns, the Court will grant the Plaintiff's
> motion to recuse. However, the Court reserves the right upon
> further investigation to refer the matter to the Florida Bar, the
> University of Miami School of Law, and the United States
> Attorney for any action they deem appropriate.

(DE:45:91).

Lehr sent a copy of the hearing transcript to Breaking Media, Inc.'s Above the

Law publication; online publication Law 360; and "numerous" AUSAs and

University of Miami employees (DE:45:15-16, 101, Exh. I).

On April 19, 2018, Judge Moreno sent a letter to the director of the externship

program at Mullane's law school expressing concerns about Mullane's

misrepresentations in his recusal motion (DE:45:11, 88, Exh. E). Judge Moreno

enclosed "materials filed" in the Barclays case and "an article on Law 360 with

quotes attributed to student Jonathan Mullane" (DE:45:88). Judge Moreno said he

was "still concerned" with Mullane's false representation in a "verified" motion

(DE:45:88, emphasis in original). Judge Moreno explained that contrary to Mullane's claim that he was dressed for the beach in shorts and flip-flops when he visited chambers, court security videos "confirm that he was properly dressed with long pants, a coat, and a tie" (DE:45:88). Judge Moreno concluded: "I leave it to the University of Miami School of Law to decide if any other action is necessary for this blatant misstatement in a 'verified pleading'" (DE:45:88). Mullane alleged Judge Moreno's letter to his law school was "malicious and defamatory" (DE:45:11).

On May 18, 2018, Lehr completed the "extern's final evaluation form" and emailed it to the career development office at Mullane's law school (DE:45:12, 93-96, Exh. G). In response to a question about "the student's understanding of professional responsibility," Lehr answered: "Mullane's understanding of professional responsibility came into question during the latter half of his clerkship when his candor was questioned by a federal district court judge regarding personal litigation being conducted by the intern" (DE:45:95). Lehr assessed Mullane's writing and analytical skills as "not on par with that of a second year law student" (DE:45:94). Lehr commented that Mullane "need[ed] to improve on his research and writing" (DE:95:96).

Mullane alleged that because of these incidents, his internship with the USAO ended prematurely (DE:45:8, 13), and he lost his future employment with the SEC

12

(DE:45:17). In December 2017, Roberts had "personally" interviewed and offered him a position as an intern in the SEC's Miami office (DE:45:3). She "unambiguously promised [him] full-time gainful employment in the federal government in Washington, D.C. after the completion of his law school studies if he would agree to accept the Miami, Florida role, which he did" (DE:45:17). Mullane "passed the SEC's stringent background check" (DE:45:20, 103, Exh. J). But Roberts emailed the hearing transcript and Judge Moreno's recusal order to her colleagues in the SEC (DE:45:20-21, 107, Exh. L).

In May 2018, the SEC sent Mullane a letter rescinding its "initial invitation to participate in the Student Honors Program in the Miami Regional Office as a Student Honors Volunteer" based on its review of his "background, training, and suitability for the position" (DE:45:20, 105, Exh. K).

For the next two years, "Defendants and their agents" interfered with Mullane's "Privacy Act and FOIA requests" to cover up their wrongdoing and obstruct the lawsuit he filed against Judge Moreno in the District of Massachusetts (DE:45:18-19).[5]

---

[5]    Although not relevant to this appeal, we note that the District of Massachusetts dismissed Judge Moreno and AUSA Lehr for lack of personal jurisdiction, and the First Circuit Court of Appeals affirmed. Mullane v. United States, et al., 2021 WL 3027150 (1st Cir. 2021).

Mullane alleged that the defendants forced him to withdraw from law school, prevented his admission to a state bar and employment as a lawyer, and caused his depression, anxiety, and post-traumatic stress disorder (DE:45:17-18).

**3.    Standards of Review**

This Court reviews de novo the district court's grant of a motion to dismiss for failure to state a claim. Timson v. Sampson, 518 F.3d 870, 872 (11th Cir. 2008). It reviews briefs filed by pro se litigants "liberally," but issues not briefed on appeal by pro se litigants "are deemed abandoned." Id. at 874. See United States v. Campbell, 26 F.4th 860, 873 (11th Cir. 2022) (en banc) (appellant forfeits an issue by failing to it in his initial brief). It reviews the denial of a motion for reconsideration for abuse of discretion. PBT Real Estate, LLC v. Town of Palm Beach, 988 F.3d 1274, 1287 (11th Cir. 2021).

**Summary of the Argument**

Mullane filed a scattershot 19-count complaint that wove a conspiracy from a series of unfortunate events during his four-month student internship with the Miami USAO. He claimed that a federal district court judge, the United States Attorney, an AUSA, and an SEC attorney hatched a scheme to fire him from his internships and ruin his chances of future employment. At the motion to dismiss stage, the district court had to accept his factual allegations as true, but it did not have to accept his

legal conclusions, sheer speculation, or implausible conspiracy theories. And it could consider the complaint's exhibits that contradicted many of Mullane's allegations. The court's detailed and thorough 44-page memorandum opinion reflects its careful analysis and proper application of the law.

Judge Moreno enjoyed absolute judicial immunity as to all claims because his alleged acts (making statements at a hearing and in an order, calling a pro se litigant to notify him of the hearing, gathering information about Mullane's lack of candor to the court, and reporting it to Mullane's law school) were "judicial" acts that occurred in, or arose directly from, a civil case pending before him.

Lehr, Greenberg, and Roberts enjoyed qualified immunity from liability for the alleged constitutional violations. All their alleged acts (such as hiring and firing interns and evaluating work performance) happened in the workplace and were within the scope of their discretionary authority as government attorneys. Mullane failed to allege a violation of the Fourth or Fifth Amendment that was "clearly established" by existing Circuit or Supreme Court precedent and would have put them on notice that anything they did was unconstitutional.

Because Lehr, Greenberg, and Roberts submitted the United States Attorney's Westfall Act certification that they were acting within the scope of their employment at the time of the events alleged in the complaint, the burden fell to Mullane to show

15

they were not. He failed to satisfy that burden. The district court correctly dismissed them as defendants from all the Florida common law torts claims and substituted the United States. Mullane later dismissed the United States.

Mullane failed to state a claim for civil RICO or RICO conspiracy for two reasons. First, he failed to allege that the defendants committed any criminal predicates, much less a pattern of "two or more" as the statute requires. He does not challenge that finding on appeal, and this Court can affirm on that basis alone. In any event, he also failed to allege that the (non-existent) criminal conduct was "continuing" in nature. The alleged acts (which were not crimes) lasted all of four months. His conclusory and formulaic allegations that the defendants "conspired" with each other could not support a RICO conspiracy claim.

Finally, the district court correctly dismissed "Does 1-10." At the point of his second amended complaint, Mullane still could not describe the "Does" or allege what he thought they did. And he failed to show that he could easily identify them through discovery. This Court should affirm the district court's well-reasoned dismissal of the second amended complaint.

16

**Argument**

## I.  The District Court Did Not Procedurally Err In Its Application of Federal Rule of Civil Procedure 12(b)(6).

Mullane argues that the district court procedurally erred in its application of Federal Rule of Civil Procedure 12(b)(6) by failing to take his allegations as true and making its own "unauthorized factual findings" (Mullane's Issue I, Brief:22-28). His argument finds no support in the law or the district court's thoughtful and well-reasoned opinion.

The federal rules require a complaint to have a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. Id. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id.

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. When considering a motion to dismiss under Rule 12(b)(6), the court "must accept the factual allegations in the

17

complaint as true and construe them in the light most favorable to the plaintiff." Timson, 518 F.3d at 872. But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. And to survive a motion to dismiss, a complaint must establish "more than a sheer possibility that a defendant has acted unlawfully" and must "state a claim to relief that is plausible on its face." Id. When considering a motion to dismiss, district courts should (1) "eliminate any allegations in the complaint that are merely legal conclusions, and (2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 556 U.S. at 679).

Although the pleadings of pro se plaintiffs are held to a less stringent standard than those prepared by counsel, they remain subject to the Federal Rules of Civil Procedure. Albra v. Advan, Inc., 490 F.3d 826, 829 (11th Cir. 2007). A court's "duty to liberally construe a plaintiff's complaint . . . is not the equivalent of a duty to re-write it for" the plaintiff. Snow v. DirectTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

Here, the district court properly applied these principles in its careful and thorough consideration of Mullane's second amended complaint. Mullane argues

18

that the district court failed to accept his allegations as true and improperly made its own "unauthorized factual findings" (Brief:22-25). The district court did no such thing. In fact, the court expressly stated: "The facts set out herein are taken from Mullane's Verified Second Amended Complaint, doc. 45, and are assumed to be true for purposes of this memorandum opinion" (DE:78:3). We should take the district court at its word. Nothing in the record suggests the court knew and acknowledged the applicable legal standard, and then ignored it.

Mullane faults the district court for considering the exhibits he attached to his complaint (Brief:23-34). For example, in determining whether any of Judge Moreno's statements or actions subjected him to liability, the district court considered Judge Moreno's actual statements, which Mullane attached as exhibits to his complaint (DE:78:4, 11). The court did not err in doing so. District courts must treat the exhibits attached to the complaint as part of the complaint for Rule 12(b)(6) purposes. Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1215-16 (11th Cir. 2012); Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1198 (11th Cir. 2007) (the court must accept the facts in the plaintiff's complaint and attached exhibits).

The district court also did not have to assume the truth of any allegations that were contradicted by the exhibits to his complaint. "[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." Griffin

Indus., 496 F.3d at 1206. And while the court had to assume the truth of Mullane's factual allegations, it did not have to assume the truth of his legal conclusions or implausible conspiracy theories. Courts may infer from the factual allegations in the complaint "obvious alternative explanations," which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer. American Dental Ass'n, 605 F.3d at 1290.

So the court was not required to accept Mullane's speculation that the hearing in his Barclays case had nothing to do with his ex parte visit to chambers in that case, because the transcript attached to the complaint unequivocally showed Judge Moreno's intent: to allow Mullane to explain that visit (DE:45:61). The court was not required to assume the truth of Mullane's suspicion that Judge Moreno personally called him on his cell phone to trick him into thinking the hearing was about his Barclays case (DE:45:8) when the transcript attached to the complaint showed that Judge Moreno called him because Mullane, as a pro se litigant, did not receive electronic notices (DE:45:78-79). The district court was not making "factual findings" at the Rule 12(b)(6) stage. Rather, the court was properly considering the exhibits Mullane attached to his complaint.

Similarly, the district court did not have to accept the truth of Mullane's claim that he visited Judge Moreno's chambers simply to ask a clerk for a certified copy

of the record (DE:45:9-10), because it was squarely contradicted by the transcript. Mullane admitted he visited Judge Moreno's chambers because he "had a specific question about the entry of default" (DE:45:64) and wanted to "file a petition for mandamus" in his <u>Barclays</u> case (DE:45:66, 69).

Mullane argues that the district court abused its discretion by dismissing his second amended complaint without allowing discovery or holding an "evidentiary hearing" (Brief:25). An evidentiary hearing is not necessary or even appropriate on a motion to dismiss, where the court considers only the allegations in the complaint and the exhibits attached to the complaint to determine whether it states a claim upon which relief can be granted. As for discovery, Mullane already was on his second amended complaint. The court had allowed him two prior chances to amend it to state his case. Mullane never explained to the district court what he hoped discovery would achieve. And on appeal, he still does not explain how any "discovery" would have cured the legal infirmities in his second amended complaint and saved it from dismissal.

Finally, Mullane argues that the district court "erroneously relied" on Judge Moreno's findings in the <u>Barclays</u> lawsuit, "all of which are null and void" (Mullane's Issue IX, Brief:53-56). Again, the district court did not rely on "findings"

in another lawsuit to dismiss the complaint in this case; it properly considered the hearing transcript and recusal order because they were exhibits to his complaint.

## II.    The District Court Correctly Dismissed All Claims Against Judge Moreno Because He Enjoyed Absolute Judicial Immunity.

Mullane named Judge Moreno as a defendant in 17 of the 19 counts in his second amended complaint. He alleged that Judge Moreno: threatened, intimidated, and falsely accused him of criminal conduct at the hearing (DE:45:8-10, 28, 34); entered an order containing "false and defamatory" statements (DE:45:11, 90-91); called him personally about the hearing to trick him into believing it was about his Barclays case and ensure he'd be there alone (DE:45:8, 34); asked Lehr to send him Mullane's USAO timesheet (DE:45:13-14); and sent a "malicious and defamatory letter" to his law school (DE:45:11, 42-43, 88).

The district court assumed, for purposes of the motion to dismiss, that Judge Moreno did the things Mullane alleged he did. But after carefully examining each alleged act, it correctly concluded that Judge Moreno was entitled to absolute judicial immunity as to all of them (DE:78:8-16). Mullane makes four challenges to that ruling (Mullane's Issues III-VI, Brief:31-41). None has merit.

### A.    The Applicable Law

"A judge enjoys absolute immunity from suit for judicial acts performed within the jurisdiction of his court." Stump v. Sparkman, 435 U.S. 349, 356-57

22

(1978); <u>McCullough v. Finley</u>, 907 F.3d 1324, 1330 (11th Cir. 2018); <u>Dykes v. Hosemann</u>, 776 F.2d 942, 945 (11th Cir. 1985) (en banc). Because a judge's absolute immunity provides "immunity from suit, not just from ultimate assessment of damages," it is "not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." <u>Mireles v. Waco</u>, 502 U.S. 9, 11 (1991). In other words, "[a] judge enjoys absolute immunity for judicial acts regardless of whether he made a mistake, acted maliciously, or exceeded his authority." <u>McCullough</u>, 907 F.3d at 1331. Even "tragic consequences" that result from a judge's acts do not warrant denying him absolute immunity from suit." <u>Id.</u>

Absolute immunity applies to "judicial" acts, but not "administrative" or "executive" acts. <u>Forrester v. White</u>, 484 U.S. 219, 227-29 (1988) (judicial immunity does not extend to judge's demotion of court employee). Whether an act by a judge is a "judicial" one relates to the nature of the act itself (whether it is a function normally performed by a judge), and to the expectations of the parties (whether they dealt with the judge in his judicial capacity). <u>Mireles</u>, 502 U.S. at 12.

Instead of assessing the motivation behind a judge's acts, the court determines whether the "nature and functions" of the alleged acts are "judicial" by considering four factors: "(1) the precise act complained of is a normal judicial function; (2) the

events occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the confrontation arose directly and immediately out of a visit to the judge in his official capacity." McCullough, 907 F.3d at 1331. "A judge's motivation is irrelevant to determining whether his act was judicial." Id.

If judges' acts are judicial, "they enjoy absolute immunity unless they acted in the 'clear absence of all jurisdiction.'" McCullough, 907 F.3d at 1332. A judge acts in the "clear absence of all jurisdiction" only if he lacked subject matter jurisdiction, which is a "rare circumstance." Id. With that legal framework in place, we examine each of Judge Moreno's alleged acts.

### B.    All of Judge Moreno's Alleged Acts Were Judicial Acts That He Performed Within His Jurisdiction as the Presiding Judge in the Barclays Case.

The district court rightly determined that all of Judge Moreno's alleged acts were judicial acts within his jurisdiction as the presiding judge in the Barclays case (DE:78:8-16).

### 1.    Statements made at the hearing and in the order

The statements Judge Moreno made at the April 10th hearing and in his order granting the recusal motion were "judicial" acts because he made them in a case that was pending before him, in his courtroom or chambers. And the statements arose

directly out of Mullane's interactions with Judge Moreno in his official capacity. Judge Moreno called the hearing in the <u>Barclays</u> case to ask Mullane to explain his <u>ex parte</u> visit he made to chambers about his <u>Barclays</u> case.    Because Judge Moreno made the allegedly defamatory statements at a hearing and in an order entered in the <u>Barclays</u> case, which was pending before him, he did not act "in the clear absence of jurisdiction."

Mullane tries to recast the April 10th hearing in the <u>Barclays</u> case into a "criminal contempt hearing" over which Judge Moreno lacked "subject matter jurisdiction" (Mullane's Issue V; Brief:37-39). But the transcript attached to the complaint contradicts that claim. It was not a criminal contempt hearing, and Judge Moreno even said, "I'm not going to hold you in contempt" (DE:45:80). Mullane's effort to recast the hearing as part of his "employment dispute" with the USAO fares no better. The court was not required, at the motion to dismiss stage, to accept the truth of Mullane's claim that Judge Moreno's "sole purpose and motivation" for making "threats, intimidation, and false allegations of criminal conduct" at the hearing was to give Greenberg and Lehr an excuse to fire him (DE:45:8-9). The court could rely on the exhibit to the complaint, which showed the purpose of the hearing was to ask Mullane to explain his <u>ex parte</u> visit to chambers to discuss filing a default and mandamus petition in his personal lawsuit (DE:45:61).

25

Mullane may not like what Judge Moreno said to him at the hearing, but that does not strip him of judicial immunity for making those statements. See Sibley v. Lando, 437 F.3d 1067, 1071 (11th Cir. 2005) ("we do not review whether the substance of a question at oral argument was improper, but rather, whether questions in oral arguments are judicial acts.").

### 2.    Phone call to Mullane

Judge Moreno's phone call to notify Mullane of the hearing in a pending case was a judicial act within his jurisdiction. The court was not required to assume the truth of Mullane's suspicion that Judge Moreno personally called him on his cell phone to trick him into attending a "criminal contempt" hearing without counsel, when the transcript attached to the complaint showed that Judge Moreno called him because Mullane was pro se and did not receive electronic notices (DE:45:78). And as the district court correctly held, Judge Moreno's "alleged nefarious motivation" for calling Mullane "does not impact whether judicial immunity applies to the act" (DE:78:12). A judge's absolute immunity is not overcome by allegations of bad faith or malice. Mireles, 502 U.S. at 11.

### 3.    Request for USAO timesheet

Judge Moreno's request for Mullane's USAO timesheet was also a judicial act because he did so while ruling on Mullane's recusal motion in the Barclays case

(DE:45:90). In his order, Judge Moreno cited "the log of attendance at the United States Attorney's Office" where Mullane reported working from 11:00 a.m. to 5:00 p.m. on the day he visited chambers (id.). Judge Moreno was "troubled" by Mullane's lack of candor in his verified motion, where he claimed to be wearing "shorts and flip-flops" when he visited chambers (id.). As the district court correctly concluded, "Judge Moreno's alleged request to Lehr related directly to his decision on a motion pending before him," and the request was "seeking information to rule on the motion" (DE:78:13). "Because ruling on a motion is a normal judicial function, Judge Moreno did not act in the clear absence of jurisdiction when he made the alleged request to Lehr" (id.).

Mullane argues that Judge Moreno's actions were "prosecutorial acts" not "judicial acts" because he "seized" his employment records in violation of the Fourth Amendment (Mullane's Issue IV; Brief:35-36). Judge Moreno was not prosecuting him, he was ruling on his motion. And there was no "seizure" because Mullane alleged that when Lehr asked for his employment records, he "willingly complied" with that request (DE:45:14).

### 4.    Letter to law school

Finally, Judge Moreno sent a letter to Mullane's law school to express his concern about Mullane's "blatant misrepresentation in a 'verified pleading'" that

27

Mullane filed in case before him (DE:45:88). Reporting evidence of a violation of the rules of professional conduct or matters that concern the integrity of the judicial system is a normal judicial function. And the content of the letter arose directly from a case Judge Moreno presided over and from Mullane's visit to his chambers about that case.

As the district court observed, Canon 3(B)(5) of the Code of Conduct for United States Judges directs judges to "take appropriate action" when they learn of "reliable evidence indicating the likelihood that . . . a lawyer violated applicable rules of professional conduct" (DE:78:15). Mullane was not "a lawyer" yet. But that did not mean Judge Moreno was acting outside his capacity as a judge when he reported a future lawyer's misrepresentation to his law school for it "to decide if any other action is necessary" (DE:45:88). And the fact that Judge Moreno already had recused himself when he wrote the letter did not mean he was acting outside his jurisdiction. As the district court correctly observed, nothing in the judicial code of conduct suggests that a judge's obligations stop when his jurisdiction over a case ends or that a judge should overlook alleged ethical infractions by non-lawyers (DE:78:16).

28

## C.    <u>Harper v. Merckle</u> is Factually Distinguishable.

Mullane argues that the district court erroneously ignored <u>Harper v. Merckle</u>, 638 F.2d 848 (5th Cir. 1981), which he claims is "directly on point" and "binding precedent" (Mullane's Issue III, Brief:31-35). Wrong on both points. <u>Harper</u> set forth a four-prong test to determine whether an act is "judicial" for purposes of judicial immunity. <u>Harper</u>, 638 F.2d at 858. The district court did not cite <u>Harper</u>, but it cited two later Eleventh Circuit decisions, <u>McCullough</u> (2018) and <u>Dykes</u> (1985, <u>en</u> <u>banc</u>) that used the same test. So, Mullane can't show the court legally erred by applying the wrong analysis.

And contrary to Mullane's second point, <u>Harper</u> is not "directly on point" or even factually similar to this case. Harper brought a civil rights action against Judge Merckle, and the Court held that Judge Merckle was "not entitled to assert absolute judicial immunity under the <u>unusual</u> facts of this case." 638 F.2d at 850 (emphasis added). Unlike Mullane, Harper did not have a case before Judge Merckle. Rather, Harper went to the courthouse to give his ex-wife a child support check. <u>Id.</u> Harper's ex-wife worked as a secretary for another judge, whose chambers were next to Judge Merckle's chambers. <u>Id.</u> Because Harper's ex-wife wasn't at her desk, Harper spoke to Judge Merckle's secretary to see if she could find her. <u>Id.</u> Judge Merckle, wearing street clothes, emerged from his office and asked his secretary to retrieve the Harper

divorce file from the clerk's office. Id. In sending for the file, Judge Merckle was attempting to verify his (as it turns out, mistaken) impression, gleaned from courthouse gossip and his personal acquaintance with Harper's ex-wife, that the file contained an outstanding contempt violation. Id.

The facts got stranger. Even though there was no case pending before Judge Merckle, he made the "most unusual request," while "still seated behind his secretary's desk," to place Harper under oath. Id. Harper refused and left the room. Judge Merckle pursued him into the hall; and "a chase scene ensued." Id. After the bailiffs caught Harper, "Judge Merckle began a 'contempt proceeding' of sorts." Id. at 852. Judge Merckle found Harper in "contempt of court," and sent him to jail. Id. at 853-54.

On those facts, the Court held that Judge Merckle was not entitled to judicial immunity because the controversy that led to Harper's incarceration "did not center around any matter then pending before the judge; rather, it centered around the domestic problems of one of the Judge's friends, Harper's former wife." Id. at 859. Harper did not visit Judge Merckle "in his official capacity," and they interacted "in a social, not judicial, forum." Id. The Court "caution[ed] that our holding is exceedingly narrow and is tailored to this, the rarest of factual settings." Id.

30

The facts in this case bear no resemblance to those in <u>Harper</u>. Judge Moreno scheduled a hearing in a civil action that Mullane filed, and he questioned Mullane about an <u>ex parte</u> contact with the court in that same pending case. Any "confrontation" between Mullane and Judge Moreno arose directly from what occurred at the April 10th hearing and the misrepresentations Mullane later made in his recusal motion. In short, <u>Harper</u>, which reversed the district court's grant of judicial immunity on "the rarest of factual settings," has no application here.

## III.   The District Court Correctly Dismissed The <u>Bivens</u> Claims Against Lehr, Greenberg and Roberts Based On Qualified Immunity.

In Counts 13 and 14, Mullane asserted a <u>Bivens</u> claim based on alleged violations of: the Fourth Amendment right to be free from unreasonable searches and seizures; defendants' "obligation to provide a <u>Garrity</u> and/or <u>Kalkines</u> warning prior to the April 10, 2018 hearing;" defendants' "obligation to provide a <u>Loudermill</u> hearing;" his "property rights" to his "USAO and SEC employment agreements;" his "right to petition the judiciary for redress; [his] constitutional right to privacy; [his] right to legal counsel in all criminal matters; and countless other related wrongs in violation of" the Constitution (DE:45:39-40).

The district court held that Lehr, Greenberg, and Roberts enjoyed qualified immunity on these claims because (a) they took all the alleged acts within the scope of their discretionary authority as government attorneys, and (b) Mullane failed to

31

allege a violation of a "clearly established constitutional right" that would have put them on notice that what they did violated the Constitution (DE 78:19-29). Mullane's challenge to that ruling (Mullane's Issue VII, Brief:42-50) fails for several reasons.

### A.    The Relevant Law

A court must dismiss a complaint on qualified immunity grounds if the complaint, including the attached exhibits, fails to allege the violation of a clearly established constitutional right. Griffin Indus., 496 F.3d at 1198. Allowing private citizens to sue public officials requires a careful balance between two powerful and competing interests. "The importance of vindicating constitutional rights in a court of law must be balanced against the social costs associated with burdening public officials with vexatious litigation and inhibiting them in the proper discharge of their official duties." Id.

To accommodate these conflicting interests, the doctrine of qualified immunity "shields Government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights.'" Iqbal, 556 U.S. at 672. "An official asserting that he is entitled to qualified immunity must initially establish that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Griffin Indus., 496 F.3d at

1199. Once the defendant has made this showing, the burden shifts to the plaintiff to overcome the qualified immunity by showing a violation of a "clearly established" constitutional right. Id. The protection of qualified immunity extends to "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). And because vicarious liability is inapplicable to Bivens suits, a plaintiff must plead that each defendant, through her own actions, violated the Constitution. Iqbal, 556 U.S. at 677. We turn now to each of Mullane's contentions on appeal.

**B.    Lehr, Greenberg, and Roberts Acted Within The Scope of Their Employment.**

To begin with, Mullane did not dispute that Lehr, Greenberg, and Roberts were acting with the scope of their employment until after the district court dismissed his second amended complaint. In its order, the district court noted, "Mullane does not dispute the defendants' contention that they were acting within their discretionary authority when the alleged acts occurred" (DE:78:20, n.16; see DE:61:17-22).

It was not until he moved to reconsider the dismissal of his second amended complaint that Mullane first claimed that Lehr and Greenberg acted outside the scope of their discretionary authority as government attorneys (DE:92:3-5). He argued Lehr and Greenberg did not have discretionary authority to conduct an "internal

33

investigation" of his misconduct while he was an intern at the USAO (id.).[6] The district court correctly rejected his argument (DE:104:7). "Because Mullane could have raised this issue before the court ruled on the motion to dismiss, it was not a proper basis for a motion to reconsider" (id.). Mullane does not show the district court abused its discretion. A motion for reconsideration is not an opportunity for a plaintiff to rehash his old arguments or try out new ones. See PBT Real Estate, 988 F.3d at 1288 (a motion to reconsider cannot be used to relitigate old matters or raise new arguments that could have been raised before the entry of judgment). Mullane does not argue otherwise on appeal.

In any event, Mullane's belated arguments about the scope of the defendants' authority lack merit. A government official acts within her discretionary authority if her actions were (1) undertaken pursuant to the performance of her duties, and (2) within the scope of her authority. Mikko v. City of Atlanta, Georgia, 857 F.3d 1137, 1144 (11th Cir. 2017). In applying that test, the court looks to "the general nature of

---

[6]    Mullane's motion focused on the "investigation" by the "USAO" and did not ask the court to reconsider its finding that Roberts acted within the scope of her authority as an SEC attorney. Therefore, he waived any such argument as to Roberts. See Hall v. Flournoy, 975 F.3d 1269, 1277 n. 3 (11th Cir. 2020) (appellant waived argument she did not make below and raised for the first time on appeal"); Barcelona v. Sec'y, Dept. of Corr., 847 F. App'x 689, 692-93 (11th Cir. 2021) (appellant forfeited his argument that the defendants were not acting within the scope of their discretionary authority because "he failed to raise this argument below").

the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." Id. "In other words, a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." Id. (emphasis in original) (internal quotation and citation omitted).

Mullane's own allegations defeat his claim on appeal. Mullane alleged Lehr was his "USAO supervisor" and "direct superior;" she assigned him work, spoke to him in her office at the USAO about matters that happened at the office, asked for his USAO timesheet, and completed and signed his performance review (DE:45:5-6, 12, 14, 93-96). Greenberg was the "acting United States Attorney," spoke with Judge Moreno about Mullane's actions while he was an USAO intern, and "refused to intervene" in the hearing in his Barclays case (DE:45:3, 5-8, 10-11). Lehr and Greenberg prematurely ended his USAO internship (DE:45:5). So, looking at the "general nature" of their alleged acts, and putting aside whether they "may have been committed for an unconstitutional purpose," writing evaluations, speaking with judges, and terminating interns are actions that a supervisory AUSA or the United States Attorney would reasonably do as part of their discretionary duties. And

35

contrary to Mullane's contention, a supervisor's investigation of workplace misconduct, or a request for an intern's timesheet to confirm whether he was working at the USAO on the day he visited Judge Moreno's chambers, falls well within the scope of their authority and duties.

### C.    Mullane Failed to Allege a Violation of a "Clearly Established" Right.

Next, Mullane argues that he carried his burden of showing violations of "clearly established" constitutional rights (Brief:46-50). He did not.

Courts may grant qualified immunity when a purported right is not "clearly established" by prior case law, without resolving the often more difficult question whether the purported right exists at all. Reichle v. Howards, 566 U.S. 658, 664 (2012). This approach comports with the Court's "usual reluctance to decide constitutional questions unnecessarily." Id. To be "clearly established," a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" Id. In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." Id. This "clearly established" standard "protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring that officials can "'reasonably ... anticipate when their conduct may give rise to

36

liability for damages.'" Id. Mullane failed to satisfy the "clearly established" standard on either of his constitutional claims.[7]

### 1. First Amendment

Mullane argues, first, that the defendants violated "clearly established" First Amendment rights (Brief:46-47). But Mullane's second amended complaint did not allege a violation of the First Amendment (DE:45:39-40). And he did not raise the First Amendment in his response to the motion to dismiss (DE:61:17-19). The first time Mullane mentioned the First Amendment was in his motion to reconsider the dismissal of his second amended complaint (DE:92:5) The district court properly rejected his new claim because Mullane failed to plead it in his second amended complaint, "much less raise the issue in his opposition to the defendants' motion to dismiss" (DE:104:7).

---

[7]     Mullane argues that the district court applied the wrong legal standard by requiring him to present "materially similar" cases to show that a constitutional right was "clearly established" to defeat qualified immunity (Brief:50). He does not support that argument with a record citation. In fact, the district court never said "materially similar" anywhere in its order. He chides the district court for erroneously applying pre-2002 law, which, he says, changed with Hope v. Pelzer, 536 U.S. 730 (2002) (Brief:50). But the district court not only cited Hope in its memorandum opinion (DE:78:29), but also cited post-Hope precedent (DE:78:20).

### 2.    Fourth Amendment

Mullane makes two Fourth Amendment arguments. First, he argues that Lehr's request for his "personal employment records, which were on his personal laptop computer" (DE:45:13) was a search and seizure in violation of the Fourth Amendment. To begin with, nobody searched his personal computer. Lehr's request for Mullane's timesheets that he kept on his personal laptop computer was not a Fourth Amendment "seizure" because Mullane did "not contend that his compliance with Lehr's allegedly deceptive request interfered with his possessory interest in those files" (DE:78:21-22). And he presented no authority "suggesting that an employee has a reasonable expectation of privacy in his work schedule or timesheets" (DE:78:22).

On appeal, Mullane argues that the defendants violated "clearly established" Fourth Amendment rights. But, as in the district court, he fails to cite a single case holding that a supervisor violates the Fourth Amendment when she asks an employee to give her the timesheet he keeps on his personal laptop. He broadly asserts a "reasonable expectation of privacy" to a work timesheet he keeps on his personal laptop computer. But "the right allegedly violated must be established not as a broad general proposition, but in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official." Reichle, 566 U.S. at 665 (internal citations

38

omitted). Mullane does not cite (and we are unaware of) any Eleventh Circuit or Supreme Court cases holding that an employee has a reasonable expectation of privacy in his work timesheet, or that it violates the Fourth Amendment to comply with a supervisor's request for it, no matter what the reason.

Mullane also argues that his person was "seized" at the April 10th hearing in violation of the Fourth Amendment because no reasonable person could have believed he was free to leave that hearing (Brief:48). As with his First Amendment claim, Mullane did not raise his "unlawful seizure of the person" argument until after the court dismissed his second amended complaint (DE:92:6). The district court rejected Mullane's new Fourth Amendment claim for "unlawful seizure of his person at the hearing before Judge Moreno" because "he did not plead this in his complaint" (DE:104:7) (emphasis in original). And his "unlawful seizure" claim fails for the same reason that his "unlawful search" claim fails. He points to no Circuit or Supreme Court precedent making the right so clear that every reasonable official would have understood that what he was doing was unconstitutional.

### 3.    Fifth Amendment

Mullane alleged Fifth Amendment violations because he did not receive a "<u>Garrity</u> warning or a <u>Kalkines</u> warning" before the April 10th hearing (DE:45:10,

39).[8] The district court dismissed those claims on qualified immunity grounds in the absence of any authority suggesting that <u>Garrity</u> or <u>Kalkines</u> provided protection to an unpaid student intern or prospective employees; or any allegation that any defendant compelled him to make incriminating statements at the April hearing (DE:78:23). Mullane does not challenge that ruling on appeal.

Mullane's other Fifth Amendment claim was that he did not receive a "<u>Loudermill</u> hearing" (DE:45:10, 39). <u>Cleveland Bd. of Education v. Loudermill</u>, 470 U.S. 532, 542 (1985) held that due process "requires 'some kind of a hearing' prior to discharge of an employee who has a constitutionally protected property interest in his employment." But because "[p]roperty interests are not created by the Constitution," whether an employee has a protected property interest in his employment depends on "existing rules or understandings that stem from an independent source such as state law." <u>Id.</u> The district court dismissed that claim on qualified immunity grounds because Mullane cited no controlling authority that his

---

[8]    <u>Garrity v. State of New Jersey</u>, 385 U.S. 493, 499-500 (1967) held that Fifth Amendment protections apply to public employees who, under the threat of job loss, are required to make incriminating statements during internal investigations. <u>Kalkines v. United States</u>, 473 F.2d 1391, 1393 (Fed. Cl. 1973) held that federal employees may be discharged for refusing to answer questions in an internal investigation if the government adequately warns them that they may be discharged for not answering the questions and that their answers cannot be used against them in criminal proceedings.

unpaid internship with the USAO and future internship and employment with the SEC qualified him as a federal government employee or gave him a protected property interest in that employment (DE:78:24-25). Mullane does not challenge that ruling either.

In his motion to reconsider the dismissal of this complaint, Mullane pivoted from an alleged "property" right in his unpaid student internships to a "liberty" interest in his reputation (DE:92:9). As he did below, he now claims that Lehr, Greenberg, and Roberts violated his "Fifth Amendment constitutional right" by not giving him a "name-clearing hearing" (Mullane's Issues II and VII, Brief:28-31, 49). He argues that this due process right was "clearly established" in Codd v. Velger, 429 U.S. 624 (1977) and this Court's unpublished decision in Johnston v. Borders, 724 F. App'x 762 (11th Cir. 2018).[9]

The Supreme Court defined a liberty interest in reputation in a series of cases. In Board of Regents v. Roth, 408 U.S. 564, 573 (1972), the Court held that a state university's refusal to renew the contract of a nontenured professor did not deprive the professor of a liberty interest, because the state made no charges against the professor "that might seriously damage his standing and associations in his

---

[9]    "Unpublished cases do not serve as binding precedent and cannot be relied upon to define clearly established law." Crocker v. Beatty, 995 F.3d 1232, 1241 n. 6 (11th Cir. 2021).

community." The state did not impose on the plaintiff "a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." Id. Then, in Paul v. Davis, 424 U.S. 693, 701 (1976), the Court held that the state's widespread defamation of the plaintiff did not deprive him of a protected liberty interest, because the damage to his reputation did not come with any tangible loss. Next, in Bishop v. Wood, 426 U.S. 341, 348 (1976), the Court held that termination of a police officer for alleged misconduct did not infringe on the officer's liberty interest because the city did not publicly disclose the allegations of misconduct.

Finally, in Codd, which is the case Mullane relies on, the Court clarified that a "name clearing" hearing is required "only if an employer creates and disseminates a false and defamatory impression about the employee in connection with his termination." 429 U.S. at 628. In Codd, the plaintiff alleged that he was fired from his job as a police officer and was entitled to a hearing due to the stigmatizing effect of certain material in his personnel file. Id. at 882-83. But because he failed to allege that the information in his personnel file was false, he failed to state a claim for a due process violation. Id. at 884-85.

Putting that all together, a plaintiff must show: (1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) made public (5) by the governmental employer (6) without a meaningful opportunity for

42

employee name clearing. <u>Buxton v. City of Plant City</u>, 871 F.2d 1037, 1042-43 (11th Cir. 1989). Mullane's second amended complaint failed to do that. First, he made no allegation that the USAO or the SEC published any information—much less false and stigmatizing information—about the reason for his alleged early termination from his USAO internship.[10] He alleged only that Lehr sent the (publicly available) transcript of the (public) hearing in his <u>Barclays</u> case to news outlets, AUSAs, and his law school (DE:45:15-16, 101), and that Roberts sent it to her colleagues at the SEC (DE:45:20-21, 107). The transcript might not have been flattering to Mullane, but it was not false (he admitted doing what Judge Moreno said he did). And the transcript did not mention any reasons for his termination; he was still employed as an intern at that time. Further undercutting any argument that the defendants published private information about him, Mullane disclosed the subject of the hearing to the dean of his law school (DE:45:101). And any concern about the right to clear his name was satisfied by the hearing itself. Judge Moreno held the April 10th hearing precisely to give Mullane the opportunity to explain the reason for his

---

[10]     We give Mullane the benefit of the doubt on his allegation that the USAO fired him from his internship. At the April 10th hearing, Mullane told Judge Moreno that he was already in the "last week" of his internship (DE:45:61), suggesting the term of his internship was drawing to a close anyway.

43

ex parte visit to chambers and give his side of the story (DE:45:61 ("I wanted to give you a chance to explain.").

In short, because Mullane cited no authority to show violations of his clearly established constitutional rights, the district court properly dismissed the Bivens claims against Lehr, Greenberg, and Roberts.

## IV.    The District Court Properly Substituted The United States As A Defendant In Place Of Lehr, Greenberg, And Roberts As To All The Florida Tort Claims.

Mullane argues that the district court's substitution of the United States for the attorney defendants on the Florida tort claims violated binding Circuit precedent (Mullane's Issue VIII, Brief:50-53). He is mistaken.

"The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." Osborn v. Haley, 549 U.S. 225, 229 (2007) (citing 28 U.S.C. § 2679(b)(1)). The Act empowers the Attorney General (or designee) to respond to a suit against a federal employee by certifying that the employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose." § 2679(d)(1), (2). Upon such certification, the employee is dismissed from the action, and the United States is substituted in her stead. Id.

44

The certification is subject to judicial review. <u>Gutierrez de Martinez v.</u> <u>Lamagno</u>, 515 U.S. 417, 420 (1995). If a plaintiff challenges the Attorney General's certification, the district court must review it <u>de novo</u>. <u>Flohr v. Mackovjack</u>, 84 F.3d 386, 390 (11th Cir. 1996). Because the Attorney General's certification is <u>prima facie</u> evidence that the conduct occurred within the scope of employment, the plaintiff bears the burden of proving that the employee acted outside the scope of employment. <u>Id.</u> The question of whether an employee acted within the scope of her employment for purposes of § 2679(d)(1) is governed by the law of the state where the incident occurred. <u>Id.</u>

Here, the district court reviewed the United States Attorney's certification under the proper <u>de novo</u> standard of review (DE:78:43-44). Accepting the allegations in the complaint as true, the district court applied Florida law to determine whether Mullane satisfied his burden of establishing that Lehr, Greenberg, and Roberts had acted outside the scope of their employment. As the court correctly found, Mullane failed to carry his burden.

Under Florida law, the conduct of an employee is considered within the scope of employment when it (1) is of the kind the employee is hired to perform, (2) occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) is activated at least in part by a purpose to serve the master.

45

Fields v. Devereux Found, Inc., 244 So. 3d 1193, 1196 (Fla. Dist. Ct. App. 2018). Mullane argues that Lehr, Greenberg, and Roberts did not act within the scope of their employment because they committed intentional torts (DE:61:22-26). But under Florida law, even an employee's intentional torts can be within the scope of her employment if the employee's "tortious conduct is undertaken in furtherance of the employer's interests." Fields, 244 So. 3d at 1196.

Mullane relies on Nadler v. Mann, 951 F.2d 301 (11th Cir. 1992) (Brief:50-52), a case with different facts. In Nadler, AUSA Mann received information from a public official that Judge Nadler had accepted a bribe in a case pending before him. Id. at 302-04. Mann was Judge Nadler's political opponent in a judicial election. Mann arranged a meeting between the public official and an FBI agent. One week before the election between Judge Nadler and Mann, the news reported that Nadler was the subject of a federal criminal investigation about the alleged bribe. Id.

Nadler sued Mann for defamation, claiming Mann defamed him by initiating the investigation and then leaking it to the press. Id. The United States filed a certification that Mann was acting within the scope of his employment and moved for substitution of the United States as the sole defendant. The district court substituted the United States and dismissed Mann. Id.

On appeal, this Court held that Mann was acting within the scope of his employment as an AUSA when he arranged a meeting between a public official and the FBI, and when he spoke about the public official's allegation with fellow DOJ attorneys. Id. at 305-06. On the other hand, "[a]n AUSA does not act with in the scope of his employment when he leaks information regarding a criminal investigation to the news media." Id. at 306.

Contrary to Mullane's argument (Brief:52), Nadler is not "identical" or remotely close to the facts alleged in this case. Mullane was never under criminal investigation. The April 10th hearing in the Barclays case was about conduct in a pending civil case. None of the defendants "leaked" non-public information about a criminal investigation to the media. Although Mullane alleged Lehr sent a copy of the hearing transcript to the media (DE:45:15-16), the Barclays hearing was public, and the transcript was available to anyone who paid the court reporter. It was not a "leak" of confidential information, as in Nadler.

Mullane's reliance on Armstrong v. Thompson, 759 F. Supp. 2d 89 (D.D.C. 2011) and Anderson v. United States, 364 F. App'x 920 (5th Cir. 2010) (Brief:53) is equally misplaced. Armstrong and Anderson involved defamation claims against a plaintiff's co-workers or subordinate employees. The defendants in those cases did not have any responsibility for reporting a co-worker's or supervisor's alleged

47

misconduct. In contrast, Lehr served as Mullane's supervisor at the USAO, and had responsibility for evaluating his performance. She prepared Mullane's performance evaluation as part of her job. Likewise, Roberts (who had offered Mullane the internship) reported her concerns about his suitability for that internship as part of her job.

Finally, Mullane fails to show that any additional discovery was needed on the scope-of-employment issue. The district court properly substituted the United States for Lehr, Greenberg, and Roberts on the tort claims.

## V.    The District Court Properly Dismissed The RICO And RICO Conspiracy Claims For Failure To State A Claim.

In Count 1, Mullane sued all the defendants under the civil RICO statute, 18 U.S.C. § 1964(c), claiming they were part of an enterprise that committed two or more predicate criminal offenses (DE:45:21-26). He broadly alleged they (1) retaliated against him in violation of 18 U.S.C. § 1513(e); (2) committed mail fraud in violation of 18 U.S.C. § 1341; and (3) violated 18 U.S.C. §§ 1512(b) and (d) by "tampering with a victim" (DE:45:22-23). In Count 2, Mullane alleged that all defendants engaged in a civil RICO conspiracy (DE:45:27). The district court correctly dismissed these counts for failure to state a claim, and Mullane fails to show any legal error in that decision.

## A.    Applicable Law

To state a claim for relief under the civil RICO statute, § 1964(c), a plaintiff must plead facts establishing three elements: (1) a violation of 18 U.S.C. § 1962; (2) injury to business or property; and (3) causation. Section 1962 lists four types of RICO violations. Mullane alleged the defendants violated § 1962(c) (DE:45, ¶ 133). Under that statute, a plaintiff must "plausibly allege" six elements: that the defendants (1) operated or managed (2) an "enterprise" (3) through a "pattern" (4) of racketeering activity that included at least two predicate acts of racketeering which (5) caused (6) injury to the business or property of the plaintiff. Cisneros v. Petland, Inc., 972 F.3d 1204, 1211 (11th Cir. 2020). If a plaintiff fails to adequately plead any one of these elements, the court must dismiss his complaint for failure to state a claim. Id.

A properly pleaded "pattern" of racketeering activity "must charge that: (1) the defendants committed two or more predicate acts within a ten-year span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature." Jackson v. Bell South Telecomms, 372 F.3d 1250, 1264 (11th Cir. 2014) (emphasis in original). The district court correctly held that Mullane's second amended complaint failed to satisfy those requirements and dismissed Mullane's RICO claim for two reasons: (1) his allegations failed to

49

allege any viable predicate acts, and (2) he failed to allege criminal acts of a "continuing" nature (DE 78:30-40). On appeal, Mullane does not challenge, and therefore has forfeited any challenge to, the first basis for dismissal. And he demonstrates no legal error in the second reason for dismissal.

### B.    Mullane Failed to Allege Any RICO Predicate Acts

To properly allege "predicate acts" in a civil RICO claim, "a plaintiff must put forward enough facts with respect to each predicate act to make it independently indictable as a crime." Cisneros, 972 F.3d at 1215. As the district court correctly ruled, Mullane failed to adequately plead any RICO predicate act, much less two or more (DE:78:34). Mullane does not challenge that crucial finding on appeal.

First, the court found that Mullane failed to allege that any of the defendants committed criminal "mail fraud." A plaintiff who bases a civil RICO claim on predicate acts of mail fraud must comply with Rule 9(b)'s heightened pleading standard. This means "stating with particularity the circumstances constituting fraud or mistake." American Dental Ass'n, 605 F.3d at 1291. So, "a plaintiff must allege: '(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statements; (3) the content and manner in which these statements misled the plaintiff; and (4) what the defendants gained by the alleged fraud." Id.

50

As the district court found, Mullane did not allege which acts purportedly constituted mail fraud (DE:78:35). Although he alleged that Judge Moreno mailed a letter to his law school, he did not identify "the specific purportedly false or misleading statements by Judge Moreno" (DE:78:35-36). And he did not allege any mailings by Lehr and Roberts; he alleged they sent their allegedly "false" communications electronically (DE:78:36).

The district court also ruled that Mullane failed to plead criminal retaliation as a predicate act because he did not allege that the defendants took any actions against him for reporting alleged crimes (DE:78:37). And Mullane failed to plead criminal victim tampering or intimidation as a predicate because he did not allege that (a) any defendant threatened, intimidated or harassed him to prevent or influence his, or any other person's, testimony at an official proceeding; (b) the defendants took any action to prevent or hinder him, or anyone else, from giving a law enforcement officer or judge information about the commission of a federal offense; or (c) the defendants agreed to commit such acts (DE:78:37-38).

Mullane does not challenge, and therefore has forfeited any challenge to, the district court's conclusion that he failed to sufficiently plead any predicate acts. And without two or more predicate acts, he cannot state a RICO claim. This Court may affirm the dismissal of Counts 1 and 2 on that basis alone.

51

### C.     Mullane Failed to Allege Criminal Acts of a Continuing Nature

Mullane failed to plead not only the requisite predicate acts, but also criminal conduct of a "continuing" nature. The continuity element of a pattern of racketeering activity is crucial to a valid RICO claim to ensure that the crime alleged is the sort of offense that RICO is meant to address: one that is part of a pattern of ongoing, continuing criminality or that involves criminality that promises to continue into the future. Jackson, 372 F.3d at 1265. Two types of continuity may establish a RICO claim: close-ended continuity and open-ended continuity. Mullane's complaint did not sufficiently allege either one.

### 1.     Close-ended continuity

For close-ended continuity, "[a] party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." H.J. Inc. v. Northwestern Bell Telephone, 492 U.S. 229, 242 (1989). Substantial means substantial. Predicate acts "extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." Id. While no bright-line rule exists, this Court has held that acts spanning "nine months is not an adequately substantial period of time." Jackson, 372 F.3d at 1267.

Mullane alleged events that spanned only four months. The earliest acts were in February 2018, when Lehr allegedly hatched her plan to get Mullane to quit, and Mullane complained to her about his treatment in the office (DE:45:56). The main events (the hearing, the recusal order, the request for his timesheet, and Judge Moreno's letter to the law school) all happened in April 2018 (DE:45:58, 88, 90). And the last acts (Lehr's evaluation, the SEC's letter rescinding its offer) were in May 2018 (DE:45:94, 105). Even if Mullane had alleged acts that were crimes (and they are not), he did not allege a RICO scheme that satisfied close-ended continuity. Jackson, 372 F.3d at 1266 (no close-ended continuity where the specific incidents alleged in the complaint spanned nine months). Mullane argues that DeGuelle v. Camilli, 664 F.3d 192 (7th Cir. 2011) is "factually analogous" (Brief:60-62), but it's not. DeGuelle held that "the predicate acts of tax fraud satisfy the close-ended continuity test because these acts occurred over a period of five years." 664 F.3d at 203. He cites no cases in which the alleged predicate acts span only four months.

### 2. Open-ended continuity

"Open-ended continuity" refers to "past conduct that by its nature projects into the future with a threat of repetition." Jackson, 372 F.3d at 1265. A RICO claim based on open-ended continuity requires pleading "either that the alleged [predicate] acts were part of the defendants' regular way of doing business, or that the illegal

53

acts threatened repetition into the future." Id. at 1267. The core of this inquiry is not the presence of multiple victims or schemes, but "whether the threat of continuity is demonstrated." Id. at 1265.

As the district court correctly observed (DE:78:33), Mullane did not allege that the alleged scheme was part of the defendants' regular way of doing business, nor did he allege any specific threat of repetition into the future. His general and conclusory allegation that the "unlawful acts of the subject Enterprise unfortunately remain ongoing" (DE:45:2) could not establish open-ended continuity. Jackson, 372 F.3d at 1268 (allegations that predicate acts "pose[] a threat of continued criminal activity in the future" are not sufficient). Mullane's allegations of a "two year-long concealment" of responsive records to "cover up" their criminal scheme (DE:45:18-19) were not sufficient either. Allegations of ongoing acts aimed at concealing an initial wrongdoing do not establish open-ended continuity. Jackson, 372 F.3d at 1268.

## D.    RICO Conspiracy

The RICO conspiracy statute, 18 U.S.C. § 1962(d), makes it illegal or a person to conspire to violate any of the substantive provisions of the RICO statute. "A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by

54

showing that the defendant agreed to commit two predicate acts." <u>American Dental</u> <u>Ass'n</u>, 605 F.3d at 1293. Here, as in <u>American Dental</u>, Mullane's allegations do not support an inference of either one. His allegations that the defendants "had a systematic linkage to the other participants," "functioned as one continuing unit," and "conspired" with each other (DE:45:25, 27) were "the kinds of 'formulaic recitations' of a conspiracy claim" that this Court found insufficient in <u>American</u> <u>Dental Ass'n</u>, 605 F.3d at 1294. This is especially true where, as here, there is an "obvious alternative explanation" for each of the "collective" actions that suggests lawful, independent conduct, not a conspiracy. <u>Id.</u> It is much more plausible that Judge Moreno held a hearing for the reason he said (to inquire about Mullane's <u>ex</u> <u>parte</u> visit to chambers) and not because he was part of a conspiracy with the USAO and SEC to get Mullane fired from his internships.

## VI.    The District Court Properly Dismissed Fictitious "Does 1-10" Defendants.

"As a general matter, fictitious party pleading is not permitted in federal court." <u>Richardson v. Johnson</u>, 598 F.3d 734, 738 (11th Cir. 2010). There is a limited exception to this rule when the plaintiff's description of the defendant is so specific to be 'at the very worst, surplusage.'" <u>Id.</u> Two examples make the point. When a <u>pro</u> <u>se</u> plaintiff filed a complaint that identified the defendant as "John Doe (Unknown Legal Name), Guard, Charlotte Correctional Institute," the district court properly

55

dismissed the claim because the description of the defendant "was insufficient to identify the defendant among the many guards employed at" plaintiff's facility. Id. By contrast, when a pro se plaintiff's description of "Chief Deputy of Jefferson County Jail John Doe" was clear enough to identify him and allow service of process on "the Chief Deputy," the district court should have allowed the plaintiff to join the "John Doe" defendant. Dean v. Barber, 951 F.2d 1210, 1215 (11th Cir. 1992).

Mullane's "Doe" allegations are not nearly as descriptive. Mullane described the Does like this: "Plaintiff is currently unaware of the true names or capacities of Does 1 through 10" and they "are responsible in part and in some manner for the conduct described in this complaint" (DE:45:2). He named the Does in all but one of the 19 counts. In his "aiding and abetting" count (Count 15), the Does are the only defendants (DE:45:40). Even in that count, he did not describe the Does, or explain what they did, or when and where their alleged actions occurred. He did not even allege enough to be certain that "Does 1-10" exist. The district court correctly dismissed them (DE:78:7).

Mullane argues that the district court should have given him a chance to conduct discovery to figure out who the mysterious Does might be (Mullane's Issue XIII; Brief:64). He cites no authority and fails to show any abuse of discretion. The district court gave Mullane two chances to amend his complaint, and by his second

amended complaint, he was still unable to allege generally who the Does were and what the Does did. As the district court correctly observed, Mullane "failed to plead that he could easily identify Does 1-10 through discovery" (DE:78:7). On appeal he still fails to explain what he thinks discovery would have accomplished.

## Conclusion

For the foregoing reasons, this Court should affirm the district court's order dismissing the second amended complaint.

Respectfully submitted,

Juan Antonio Gonzalez
United States Attorney

By:    *Laura Thomas Rivero*

Laura Thomas Rivero
Assistant United States Attorney
99 N.E. 4th Street, #500
Miami, FL 33132
(305) 961-9433
laura.rivero@usdoj.gov

Lisa Tobin Rubio
Chief, Appellate Division

Daniel Matzkin
Assistant United States Attorney

Of Counsel

**Certificate of Compliance**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12.638 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements for Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-based typeface using Microsoft Word 2016, 14-point Times New Roman.

**Certificate of Service**

I hereby certify that seven copies of the foregoing Brief for the United States were mailed to the Court of Appeals by Federal Express this 27th day of May, 2022, and that, on the same day, the foregoing brief was filed using CM/ECF and served by United States mail on Jonathan Mullane, pro se, 6 Bennett Street, Cambridge, MA 02138.

*Laura Thomas Rivero*
Laura Thomas Rivero
Assistant United States Attorney

*iw*

59